Good morning your honor. Before I begin, apparently my video is not being permitted to start. Now I got a notification. My apologies. Okay, good morning your honor. May it please the court, my name is Ahmed Ibrahim and I represent the petitioner Neptali Loreto Morales. At this time I'd like to reserve five minutes for rebuttal. Mr. Morales's petition for review should be granted. The decisions of the immigration judge and the board of immigration appeals should be reversed and the case should be remanded for a number of reasons. First, the immigration judge, who I will refer to as the IJ, held the petitioner to the wrong standard of proof. My client, Mr. Morales, was only required to prove his claim of asylum based on a one in ten chance of a fear of persecution if he were returned to his home country, but instead the IJ held Mr. Morales to a preponderance of the evidence standard. That's the first reason the case should be reversed and remanded. The second reason is that the IJ abused her discretion by failing to take any measures to determine whether the petitioner was competent to proceed with his removal hearing. The IJ was made aware that the petitioner may have post-traumatic stress disorder, that counsel below had only learned that he may have this serious mental illness two days before the hearing. He requested a continuance and the judge below denied his assertion. Morales had PTSD constituted an indicia of incompetency. Your Honor, our best authority on that question is this court's decision in Mejia v. Sessions and also this court's decision in Calderon v. Sessions. In both of those cases, in fact, in the petitioner's view, this case presents even more compelling facts to support the idea that he was denied his right to a judicial competency inquiry. In those cases, like this case, the petitioners were represented by counsel. The petitioners in those cases were, in fact, granted continuances and there were multiple hearings. In fact, in at least both cases, both Mejia and Calderon Rodriguez, the petitioner was permitted to put on testimony from third-party witnesses. Despite all of that and despite in the Calderon Rodriguez case where the petitioner was also permitted to put on evidence of medical records, despite all of that, the courts in both cases granted the petitioner's relief. In this case, in contrast, the petitioner was not even permitted to have that opportunity to bring evidence before the IJ of his mental incompetency. Mr. Ibrahim, if I've counted correctly, your client had three different attorneys, at least three different attorneys, before the proceedings before the immigration judge. And these proceedings extended over five years, I believe. So there's a pretty lengthy period of time with multiple counsel. And then at the final hearing, the IJ has said, look, we're going to have to make a decision here. Counsel says, my client told me two days ago he may have PTSD, but no diagnosis, no records, no information about medical history, anything like that. So I'm having a hard time accepting your argument that this is a situation that's akin to worse than Mejia. Because there, I understood Mejia to be that the evidence that was brought forward, the agency didn't find was sufficient to find that the person was incompetent. But it was history of serious mental illness, including hallucinations, bipolar disorder, major depression, psychotic features, and that he was confused and disjointed in his testimony. It seems there was so much more before the immigration judge than just one unsubstantiated, uncopyrighted statement that the person has PTSD. So I mean, is there something I'm missing in those statements? Your Honor, I understand the point that you're making. And what I would submit is true. Our case is a little bit distinguishable from Mejia and Calderon. But what makes it more egregious and respectfully, in our opinion, is that my client was not even permitted to put evidence before the IJ to demonstrate that he had an indicia of mental incompetency. If I could just highlight that, I guess, Mr. Aram, I wanted to just kind of add on to what Judge Beatty just asked you. Because she highlighted what some of the differences were in Morales. Here, if I am looking at this BIA summary, it says, your client, while in removal proceedings, Mr. Morales adequately responded to questions asked of him, articulated a fear of return to El Salvador and Mexico, completed an application for asylum, wrote a detailed declaration, and filed pro se motions, briefs, and certificates of service on appeal. So I understand that there was a statement made by his counsel that it was pretty qualifying. I thought, you know, saying he's telling me that he suffers from, you know, PTSD. Meanwhile, and what we, you know, it looks like what the IJs are focused on are his ability to ask questions if there's any other, you know, sort of indicia of mental illness. So why does that statement by counsel outweigh, you know, everything that the IJ observed or the BIA summarized? Well, I think the statement, or rather this issue, also needs to be evaluated in connection with the next point that we made in the briefing, and that is that under the four factors in the Ahmed versus Holder case, which governs the factors the court should consider in determining whether a continuance should be granted, this issue needs to be evaluated in that context. So under Ahmed versus Holder, where you have a counsel or petitioner asking for a continuance, and those four factors are met, then the court should grant a continuance. And so in this situation, the question is not necessarily was there an indicia of mental incompetency in front of the IJ. Here on appeal, I wasn't the counsel below. I'm not able to sort of recreate that situation. All we have is the IJ's observations from that day that he was coherent and he was answering questions and so on and so forth. But the real issue here is whether when you have counsel telling the IJ, look, two days before, you know, I just got brought into this case and my client is telling me that I have PTSD, I think we need a continuance. When you have such important substantive rights at issue, and where you have in this case the IJ not taking any consideration of the Ahmed versus Holder factors, then all of that in combination is, in our view, certainly an abuse of discretion. Are you arguing that the IJ had to cite Ahmed, list the factors, tie the specific conclusions to each factor, or is it sufficient if the IJ in their colloquy or discussion of why they are denying the motion list reasons that relate to factors? In our view, the factors should have been cited and the IJ should have recited why those four factors have not been met. Now, one of the factors certainly is the granting of prior continuances, but that's only one of the four factors, to your point, Judge Beatty, earlier. The other three factors, well, before we move on to the other three factors, that fourth factor has been found by the courts where the judge merely is relying upon expeditiousness and sort of convenience for the judge's calendar. That's not found to be sufficient to satisfy those factors. And here, we don't know. Perhaps if Mr. Morales was given an opportunity, granted a continuance, he would have been able to put forward the evidence that we saw in Mejia and Calderon-Rodriguez to establish that he didn't have proper mental competency during the hearing. Perhaps he would have been able to make a better case that would have been more persuasive. Now, we believe his case was persuasive and he should have been granted relief, but perhaps he could have made a more persuasive case. And so, it's convenient for us to say that, oh, well, everything was fine and he testified coherently and he looked great, but the law requires that if the judge is put on notice that there could be a mental competency issue, that the judge should at least call timeout and do something about it. And it may have been the judge granted a one-month continuance or a couple of months, and the same thing would have happened. But of course, we don't know that because the fact that my client was suffering from PTSD, and I don't think the government disputes that, that it was, in fact, proven true as the record submitted for the court demonstrates. Right, so those are documents you submitted that are outside of the administrative record that are not before us, right, that post-date the IJ's decision? Post-date, yes. All right, so that's not before us. You know we're limited to the record before the agency. So, I have a couple questions for you. One is, you began your argument by saying that the congressional judge improperly applied a preponderance of the evidence standard to the fear of persecution prong of the asylum claim. Did your client or his counsel or you, did anyone raise this issue before the BIA? I'm not sure, but my guess is, Your Honor, that it was raised for the first time in the petition for review. Okay, and then my other question is, you say in your reply brief that at a minimum we should grant or follow the procedure the government's recommended and give him an opportunity to file a motion to reopen. So, what relief are you seeking from us? Because typically this court doesn't give permission for somebody to go before the relief that we're seeking is for the matter to be reversed and for a client to have an opportunity to have in other merits. So, that's different. That's, you're asking us to grant the petition in remand to the agency as opposed to a motion to reopen. And it was unclear to me what you by the government, not by petitioner. But our point was that at a very minimum, if the court is not persuaded by any of the arguments presented by petitioner, that we should at least be able to go back to either the IJ or the Board of Immigration Appeals and submit for them the medical records that the agency faulted my client for not bringing before them. So, in other words, the IJ and the BIA faulted Mr. Morales for not having any evidence in the record showing that he was in fact suffering from PTSD. We now have those records and therefore we believe that at the very, very minimum we should be allowed to reopen the proceedings. Okay, but you understand that under HCFR 1003.2a, this court doesn't decide that, right? I mean, it's not really if we can grant or deny. The reg states that a request to reopen or reconsider must be in the form of a written motion to the board and that the decision to grant or deny the motion to reopen or for reconsideration is within the discretion of the board. So, that's why I'm confused by your raising that with us. It doesn't seem to be anything within our bailiwick. Your Honor, again, this was maybe a question for the government because this is what they suggested that we do rather than bring the evidence before Your Honor and this panel. But at a very minimum, I don't see why this petition could not be denied without prejudice. And to allow us to file a motion to reopen with the BIA if that's where the court is headed. And obviously, we're asking for different relief. We're asking for reversal and remand. I believe my time is up. Yeah, I'll give you a couple minutes for rebuttal. Ms. Pratt, if you could state your appearance, please. You're muted. Your speaker's muted. Good morning, Your Honors. May it please the court. Cherise Pratt for the respondent, Merrick Garland. Your Honors, the agency applied the correct standard of proof and took appropriate measures in light of Ahmad and matter of MAM. No evidence was excluded and the petitioner had an opportunity for five years during his removal proceedings from 2013 to 2018 to submit evidence of his any kind of mental illness. He did not do anything until the day of the merits hearing when he did submit his medical records to his attorney. And you can see that on page 621. And the attorney found that the medical records did not contain any evidence of PTSD or mental illness. So that's why the attorney wanted to ask for a continuance on this speculative idea that possibly they could find something relating to PTSD or mental illness. Can I ask a question, ma'am? And this has to do with the records, but it's true, isn't it, that Mr. Morales is now being medicated by the government doctors for PTSD? Now, I don't think that's in the record. And I wonder, based on what you're arguing, do we have to ignore the fact that he is currently in the custody of the government and he is being treated for PTSD? So, okay, I'll answer in two ways. Yes, ignore that because all of that evidence is post-dates both the merits hearing and the board's decision. The board's decision was issued on February 4th, 2019. On February 14th, 2019, Mr. Morales requested a referral to a psychiatrist. And that's where he began having treatments and discussions. And I think the medication occurred maybe in May 2019. So all of this, as you know, mental illness is fluid. And at the time of his of any mental illness or PTSD. And again, he had eight months between the immigration judge's decision and the board's decision to submit evidence. So he says that he suffered prejudice because of the denial of the continuance. There's no prejudice because there was no evidence during that eight months until the board's decision issued is when he sought a referral to the medication. It appears until May, 2019. So I would submit that it's not relevant. And that kind of leads to when I asked Mr. Abraham about his comment about filing a motion to reopen and that's sort of a statement in the reply brief or something like that. So at least leave the scorched grant. And when I questioned about that, he said, I should ask the government why they made that recommendation in their brief or made that statement. What was the point of that statement in the government's brief? The point is, if this is newly available evidence that postdates everything. And if he wants to the agency to consider this, then he can file a motion to reopen. He doesn't need to seek approval from the agency or the court to file a motion to reopen. And in fact, he could have filed a motion to reopen within 90 days after the board issued its decision and he didn't. I mean, clearly, if he began psychiatric treatment in February, 2019, after the board issued its decision on February 4th, he would have been timely to file a motion to reopen at that point. So I don't understand his refusal to file a motion to reopen to have the evidence considered. Let me ask you though, I know you think there's not enough here in light what his counsel raised to raise sufficient, I guess, concerns with the IJ regarding his competency or to trigger a competency evaluation. Why was it enough to require the IJ to grant a continuance? You said, why was it? Why was it not enough for the IJ to grant a continuance to further investigate this statement of PTSD? So he had five years to put forth any evidence of medical issue. He waited to the day of the merits hearing. He had already been granted four continuances, and it was speculative. He said he may be suffering or he may have a mental illness. And just because someone is suffering from PTSD does not mean that they are incompetent. Mental illness by itself, it says it in matter of MAM does not equate with incompetency. And he had no indicia of incompetency. The judge delayed ruling on the competency hearing issue until after she heard his testimony. His testimony was clear. It was lucid. He fully understood why he was in removal proceedings. And he put forth his claims for relief for asylum and withholding of removal and pet protection. He told his story very clearly. And so it hasn't come to light until after 90 days of the end of the proceedings here. That petitioner, you know, may have suffered from mental illness during his proceedings. Is there a path for the petitioner to get to the agency to consider that evidence? Yes. Now, first of all, it wasn't 90 days, you know, after the immigration judge's decision, it was it was eight months. No, I understand. Okay. And then just you just you just laid out within 90 days, he could have filed a motion to reopen. And he made the decision. Yes. Right. And so what if it's beyond that 90 days? What what is his options? What are his options? He can still file a motion to reopen. It just, you know, won't be timely. It's timely if it's within 90 days. But I think, you know, he can make arguments that the evidence. But it's at your discretion. Then it's at the agency discretion. Uh, well, the board will will will make a ruling on it will make a decision. And then that will be another final order that he can seek, you know, a petition for review from. But but he doesn't have to ask anyone's permission to file a motion to reopen. You know, petitioners file motions to reopen all the time. Oh, I know. I understand that. But I just wasn't sure what's the agency's obligation at that point. No, the agency, the agency had no obligation. The agency, the immigration judge told him, get your evidence and file a motion to reopen. And he didn't. Eight months passed by. Then the board issued its decision. Then he went to get evidence. But to go to Judge Ruggia's point, we get to the point that the board issues its decision. The 90 days elapses and the petitioner hasn't filed a motion to reopen. He can file a motion to reopen, but as I understand it, he has to establish equitable tolling of the deadline. So in this case, if it's newly discovered evidence or evidence he couldn't discover, didn't have available to him, he would make an argument such as that to say the 90 days should be tolled and the board should consider my motion. Is that correct? Yes, he can make, he make those arguments, but he did have the evidence within 90 days of the board's decision because some of the evidence is dated February 2019. And, you know, and then going to May 2019. So it was within some of the evidences within 90 days. So, let me ask you this to follow up with those questions. The 90 day statutory time bar is in existence, as I understand what your argument is, but if under the regulations, the statutory time bar is removed when the motion to reopen is, quote, agreed upon by all parties and jointly filed, end quote. Are you agreeing that he can file that? No, no, no. That would not be my place to agree. I think he would have to seek DHS's agreement. So, shifting gears a little bit, the IJ's decision cites the regulation that sets out the preponderance of the evidence standard for grounds for mandatory denial of application for relief, which isn't that issue here. So, why, how does the government explain that citation and that decision and what it means with respect to petitioner's argument that the IJ applied the wrong standard? Okay, and what page are you referring to on the IJ's decision? I don't know the specific page, but I can find it for you. But there's a citation to HCFR section 1240.8D. Petitioner cited that, but... Take my word for it, there's a citation there, and that seems confusing at best. It's on page 538. It's at the final paragraph. It's page 537 of the record. I may interject. Page 537 of the record. Well, it's on page 537 and then page 538, but... Okay, well, the board didn't cite that portion of that regulation. They, you know, heard his claims and they determined that his fear was speculative because he said that he had been kidnapped in 1995 and that the Zetas threatened to kill him if he didn't help them help train their hitmen. And he escaped and the military tried to find the kidnappers, but never did. He remains in Mexico for three more years unharmed. The Zetas never tried to harm his mother, his nine children, one of whom is a son who is also in the military, just like Mr. Morales was. And so, and now it's, you know, over 20 years later, no one has ever been harmed. His mother, his children, nothing. So the agency found that his fear of future harm was speculative and was not supported by the record. That's what the, that's the grounds that the board affirmed. How does the government decide? Sorry. I'm sorry. Go ahead. Go ahead, Judge Malloy. Well, my question is, how does the government determine if he's removable? Does he go to Mexico where that potential threat is? Or does he go to El Salvador where he's never lived since he's been two or three years old? Right. So they, they ordered his removal to both countries in the alternative. And they found that he's unlikely to be harmed in Mexico because he was honorably discharged from the military. And, you know, all of his military service and his son is in the military. And the fact that the military was willing to go and help him after he was kidnapped. And so in El Salvador, they did not find that there was sufficient addition that El Salvador would be aware that he had ever served in the military. So they ordered his removal to both countries in the alternative. And so I would also like to point out that we recently submitted a 28-J letter based on the United States Supreme Court's recent decision in Ming Dai. And so I think that this, the petitioner relied very strongly on Ming Dai in his testimony. And what Ming Dai says is that it rejects the Ninth Circuit's judge-made rule that a reviewing court must deem a petitioner's testimony credible and true in the absence of explicit adverse credibility determination. And so, you know, Morales remained in Mexico for three years unharmed. The threats went unfulfilled to kill him, his mother, his children. So the agency found that, I mean, in Ming Dai, it says that it does not matter whether the agency accepts all, none, or some of the alien's testimony, its reasonable findings may not be disturbed. Here, Morales changed the story on the day of the merits hearing to add the kidnapping, to add the shooting at his mother's house, to add the PTSD claim. So, you know, the agency did not find that evidence persuasive in denying his request for relief and protection. And I see that I'm about out of time. If there are no further questions, I would rest on the brief. All right. Mr. Abraham, I'll give you two minutes for rebuttal. Yes, Your Honor. I think it's important to take a step back to understand why do we have the rule that was articulated in the INRE MAM case and the Mejia case and the Calderon-Rodriguez case. The point of these cases is that if you have a person, especially a person who's in the government's custody, who has a mental illness or some indicia of mental incompetency, safeguards need to be put in place to make sure that those individuals have proper representation and are in a position where they can properly make their case. And in this argument here today, we've talked about, I feel like, respectfully, we've gotten lost in the minutia. We started talking about, well, you know, maybe Mr. Morales should have done this. He should have done that. He should have filed a motion to reopen after the BIA decision. He should have raised the issue of PTSD long before he had his current counsel. But the point of these cases is if you have an individual who, as we now know, Mr. Morales was suffering from PTSD, the government should have given him counsel. If he had counsel from the very beginning, and we haven't talked about the obligation to properly screen all detainees, including... Can I have just a second, because he had counsel. He said the government should have given him counsel. He had counsel. His own counsel reviewed the documents and indicated to the IJ that he didn't see anything there, despite what his client told him. And the cases that you cite with respect to Ma'am and Mr. Morales, I'm not sure that they help you, actually, because here, I'm trying to find any authority that suggests that an uncorroborated reference to PTSD, absent any details about symptoms, treatment, or other conditions, would trigger a competency hearing under Ma'am. Because, well, you and your client argue that the agency error here was in part because of the failure to permit counsels to obtain further, I guess, evidence to demonstrate the case law that you cite. I think it was Calderon that you said, I'm looking at it, and it says, this case law explains that only when there are indicia of incompetence is the IJ required to take measures such as continuing proceedings to allow for evidence gathering. So, I understand you're doing the best that you can for your client, but absent something other than a self-reported PTSD, which came after years of proceedings during which Mr. Morales did not exhibit any signs of incompetence and was frequently represented, I'm just trying to figure out how the agency erred here in concluding that a competency inquiry was not required. Now, I think some of the questions here today was to kind of see what are his options at this point in light of our limitations by the regs and by the record and by the case law. So, I just, I understand you're doing everything you can, but I mean some of these cases, I mean, under Franco, PTSD is not one of those illnesses, I believe I'm correct on that. So, I'm sorry, I just wanted to clarify because I don't want you, I don't want there to be a sense that somehow the court is not sympathetic to someone with mental illness because that is a very, obviously, a very sensitive and serious situation, but we're trying to do our best to adhere to the case law here and want to give you every opportunity to argue your case. Your Honor, and if I may just respond to that and perhaps... Sure, of course. My point is not specifically that he did not have counsel at his merits hearing, he obviously did. My point is we need to take a step back. Franco Gonzalez requires that all persons who are received in detention by the government in an immigration context that they be screened for mental illness. My client was taken into custody in December 2017. Something got missed where his if the government had done its job from the very beginning, my client would have had counsel, stable counsel throughout because what we had instead was a situation where he had counsel, then counsel dropped out, then he had his I-589 asylum application, he filed that without counsel, then he has another counsel step in later on, and then you have the merits hearing, and then you have the BIA decision. We are being called upon to... We are asking a person who has a mental illness, we are expecting that that person will have the wherewithal at all times to be making the right calls from a legal standpoint when the very purpose of the MAM case and the statute that the MAM case relies upon is that we need to take care of people who have mental illness. And I would... Mr. Abraham... My client was not properly taken care of. No, I understand your policy argument, but I have a couple of questions about what you just said. You just made an argument... So, have one of the diagnoses listed in that decision. So, we know that, but you're saying that the agency violated the directive of Franco because he wasn't screened when he was taken into custody, wasn't screened for any mental illness. And I apologize if I've just missed it. We hear a lot of cases in a week and read a lot of briefs, but I don't remember that argument even being in your brief, let alone that argument being made before the agency. Can you point me to a brief site or a record site where that argument's been made? One moment. Okay. This is on page 19 and 20 of petitioner's reply brief. If we're using the docket entry pages, it would be pages 25 and 26. Okay. So, you raised it in your reply brief. And then you said if the government had appointed counsel, he would have had stable counsel. But as I recall the record, his counsel, two of them moved to withdraw because he wouldn't respond to them. And presumably government counsel can move to withdraw as well. So, it seems pretty speculative to suggest that somehow the appointment of counsel by the court would have made any difference. So, I guess I don't know that I'm expecting you to respond to that, but it seemed like an impassioned argument, but it seemed pretty speculative to me. And also not really supported by the record given what actually happened with his counsel, who he retained and withdrew. All I'll say, Your Honor, and thank you for that, is had Mr. Morales been able to see a medical doctor while he was in detention and presented to the immigration judge at the time that he was suffering from post-traumatic stress disorder, I don't know that that would change the opinion that it would. But at a very minimum, we would have a record before this panel demonstrating that we looked at whatever mental illness Mr. Morales had, we determined that it is affecting his competency to testify, or it's not affecting his competency to testify. And so, this portion of our argument is not necessarily arguing that the result would have been different. And in fact, prejudice is not required. We are not required to establish prejudice. But the point is that we need to fashion a rule, and respectfully, we believe that the court should fashion a rule that if you have a petitioner who's raising a question, I believe I have a opportunity to be heard. And on that, I will conclude. Thank you for the time. Thank you, Mr. Abraham, and I appreciate that. I know you're representing your client, Pro Bono, and it's greatly appreciated. Thank you, Ms. Pratt. The case of Napoli Moretto-Morales v. Merrick Garland is now submitted. Thank you.
judges: Murguia, Bade, Molloy